## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | | |
|---|---|---|
| **BILLIE JOANNE BOYD,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 7:08-cv-26 (HL) |
| | : | |
| **JONATHAN DOVWARD NICHOLS,** | : | |
| **Former Berrien County Deputy** | : | |
| **Sheriff and Jailer, Individually and** | : | |
| **In His Official Capacity;** | : | |
| **JERRY BROGDON, Former Sheriff** | : | |
| **of Berrien County, Individually** | : | |
| **and In His Official Capacity; and,** | : | |
| **BERRIEN COUNTY, GEORGIA,** | : | |
| | : | |
| Defendants. | : | |

_____

## ORDER

Currently pending before the Court is the Motion for Summary Judgment on Behalf of Defendants Jerry Brogdon and Berrien County, Georgia (Doc. 24). Plaintiff Billie Joanne Boyd has responded to the Motion (Doc. 29). After consideration of the briefs, discovery on file, and relevant case law, the Court grants Defendants' Motion for the reasons more fully set forth below.[1]

---

[1]Pursuant to the Court's Scheduling and Discovery Order entered on April 22, 2008 (Doc. 16), all dispositive motions were to be filed no later than December 8, 2008. Defendants Brogdon and Berrien County timely filed their Motion for Summary Judgment on December 4, 2008. Defendant Nichols has not filed a dispositive motion. Therefore, Boyd's claims against Defendant Nichols will proceed to trial.

## I.    BACKGROUND

On February 14, 2008, Plaintiff Boyd filed her complaint for damages pursuant to 42 U.S.C. § 1983.  Boyd alleges that her Fifth, Eighth, and Fourteenth Amendment rights, along with her rights under 18 U.S.C. § 242, were violated while she was an inmate at the Berrien County Jail (the "Jail").  The complaint also contains a number of pendent state law claims.

Boyd avers that while at the Jail, she was raped and sodomized by Defendant Jonathan Nichols, a Berrien County deputy and jailer.  Defendant Jerry Brogdon, the former sheriff of Berrien County, allegedly failed to protect Boyd, failed to adequately train his deputies and jailers, and had policies and customs of understaffing the Jail and allowing male deputies and jailers to escort and handle female inmates without any supervision.  The claim against Defendant Berrien County is that it had a custom and policy of underfunding and understaffing both the Sheriff's Department and Jail.

## II.   FACTS[2]

Defendant Brogdon served as the duly-elected sheriff of Berrien County from January 1, 1985 until August 10, 2007.  As sheriff, Defendant Brogdon oversaw the Jail and Sheriff's Department.  He was responsible for the hiring, training, and supervision of Jail employees, and was responsible for promulgating and implementing policies and procedures for the Jail.

Defendant Nichols was hired on December 6, 2006 by Defendant Brogdon to serve as a jailer at the Jail.  Prior to being hired by Defendant Brogdon, Defendant Nichols had been employed as a jailer for the Lowndes County Sheriff.  He left that employment voluntarily.  While employed in Lowndes County, Defendant Nichols became P.O.S.T. certified as a jailer effective February 20, 2006.  As part of his P.O.S.T. certification training, Defendant Nichols received training in inmate relations, sexual harassment, and ethics and professionalism.  He was aware that as a jailer, he was not to have any intimate contact with jail inmates.  He was still P.O.S.T. certified when he was hired to work at the Jail.

---

[2]In ruling on a motion for summary judgment, the court is not to make credibility determinations, weigh evidence, or draw from the facts legitimate inferences for the movant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).  Rather, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in her favor.  Id. at 255.  The Court's factual summary is so drafted.

After starting his position at the Jail, Defendant Nichols did not receive any additional formal training.  He was never given a written copy of the Jail's policies and procedures, though a copy was available in the main control room.  Defendant Nichols did, however, receive some training from another Jail employee on basic tasks, including the procedure for feeding the inmates.  During the time period in question, Berrien County did not have a policy prohibiting a male jailer from escorting a female inmate within the Jail.  It did, however, have policies requiring that female jailers be available for female inmates in certain situations, for example, if a strip search or body cavity search was conducted.

In January of 2007, Boyd was incarcerated at the Jail for violating her probation.  On February 14, 2007, Boyd attempted to call her mother from the Jail, but was unable to get through.  After seeing another inmate use it, Boyd asked Defendant Nichols if she could use his personal cell phone to call her mother.  He allowed her to use the phone, but she still could not reach her mother.  Later that evening, Defendant Nichols offered to let Boyd use his phone again.  Boyd and Defendant Nichols walked to the P-2 hallway in the housing unit.[3]  After Boyd completed her call, Defendant Nichols raped her in the hallway.  Approximately two weeks later, Defendant Nichols again took Boyd into the P-2 hallway.  There, he forced Boyd to perform oral sex on him.

_____

[3]P-2 contained lockers where the inmates' cigarettes were kept.

4

There were no cameras in the P-2 hallway during the time period at issue, but there was a security camera in the vestibule. This camera would show anyone who came in and out of the door to the P-2 hallway. The Jail's main control room contained a switchboard which indicated when doors in the Jail were open and closed. A light on the grid turned red when a door was opened or unlocked and remained red as long as the door was open or unlocked. If the door was closed or locked, the light was green. The P-2 door was often left propped open.

The P-10 tower, which was on the housing unit, had a similar switchboard and surveillance monitors. A jailer stationed in the P-10 tower would have been able to see a portion of the P-2 hallway through a window. During the early months of 2007 there usually was no one stationed in the P-10 tower.

Boyd did not report the sexual assaults until April 21, 2007, when she told her mother what happened. At no time did she report the assaults to anyone with the Berrien County Sheriff's Department. Boyd did tell her cellmate, Crystal Kelly, about the rape, but not the subsequent sexual assault. She told other female detainees what happened approximately two days before telling her mother. After that disclosure, at least one other female inmate told Boyd that she had previously had sexual contact with Defendant Nichols, and at least two inmates said that Defendant Nichols attempted to have sex with them. None of those incidents were ever reported. There had been no sexual contact between Boyd and Defendant Nichols

prior to February 14, 2007.  In fact, prior to February 14, 2007, Defendant Nichols had never escorted Boyd around the Jail premises alone.

Boyd's mother contacted Defendant Brogdon on April 21, 2007 to report her daughter's allegations.   That same day, Defendant Brogdon contacted Tony Benefield, an investigator with the Berrien County Sheriff's Department, and requested that he initiate an investigation and contact the GBI.  Defendant Nichols eventually confessed to having sexual relations with Boyd, after which Defendant Brogdon immediately terminated his employment effective April 21, 2007.[4]  Prior to April 21, 2007, however, no complaints about Defendant Nichols' behavior had been lodged with Defendant Brogdon.  To Boyd's knowledge, neither Defendant Brogdon nor anyone else with the Sheriff's Department was aware of Defendant Nichols having sexual contact with Boyd or any other female inmate prior to April 21, 2007.

The Jail ran on four shifts, two day shifts and two night shifts.  Defendant Brogdon would have preferred to have four jailers on the day shift and three jailers on the night shift, but there were not always this many jailers present.  In early 2007, there were at times three or fewer jailers working the day shift.  Jailers were normally stationed in the main control room, the P-10 tower, the intake area, and on the floor. In Defendant Brogdon's opinion, the Jail was adequately staffed during his tenure as

---

[4]Defendant Nichols eventually pled guilty to two counts of sexual assault.

sheriff.  At no time did he tell the Berrien County Board of Commissioners that the Jail was understaffed.

The jailers often decided who would work at which position during a shift.  On the day at issue, Defendant Nichols was the most senior jailer on his shift.  The other two employees working on February 14, 2007 were being trained by Defendant Nichols.  At least one of the other jailers was in the main control area when Boyd was raped.

The Berrien County Board of Commissioners funded the Jail and set the budget for the Jail.  Defendant Brogdon was in charge of overseeing the budgets for the Jail and Sheriff's Department.  In his opinion, the Jail was adequately funded, and he usually had no problems with obtaining funds from the County when he requested them.

When the current Jail opened in 2004, the County employed an official jail administrator.  The administrator was charged with looking after the daily operations of the Jail and supervising the Jail staff.  After the original administrator resigned, one of the County jailers was moved into the position by Defendant Brogdon, though he was not given the official title or salary of the jail administrator.  That jailer became responsible for the jail administrator's duties.  There was no "official" jail administrator when Boyd was sexually assaulted.

On November 7, 2006, Defendant Brogdon informed the Board that given the inmate population, he might need to hire a jail administrator in the near future.  He

had the Board's support for this request.  Approximately one month after Defendant Brogdon discussed the hiring of a jail administrator with the Board, he requested a transfer of funds out of the Jail overtime budget and into the Sheriff's Department overtime budget to cover overtime expenses for the following weeks.  Berrien County approved the transfer.  Since the sheriff is a constitutional officer, the County had no authority to direct Defendant Brogdon as to how to spend the funds budgeted for the Jail and Sheriff's Department.

Prior to the events of February 14, 2007, the Board of Commissioners was notified that the jail fund was being subsidized by the County's general fund, and at times there was not enough money to cover the costs and expenses of the Jail.  The Board was asked to consider alternatives to help cover the costs of the Jail.  The Board considered the proposed alternatives, but nothing materialized.

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party has the initial burden of informing the Court of the basis for the motion and showing that there is no genuine issue of material fact by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex

8

Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the non-moving party will bear the burden of proving the material issue at trial, then in order to defeat summary judgment, he must respond by going beyond the pleadings, and by his own affidavits, or by the discovery on file, identify facts sufficient to establish the existence of a genuine issue for trial. *See* id. at 322, 324.

A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-250 (internal citations omitted). It is not the court's function at the summary judgment stage to determine credibility or decide the truth of the matter. Id. at 249. Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Id. at 255.

Furthermore, "[a] nonmoving party, opposing a motion for summary judgment supported by affidavits[,] cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial." Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir.1991) (citation omitted), *cert. denied*, 506 U.S. 952, 113 S.Ct. 405, 121 L.Ed.2d 330 (1992). The evidence "cannot consist of conclusory allegations or legal conclusions." Id. (citation omitted). Unsupported self-serving statements by the

party opposing summary judgment are insufficient to avoid summary judgment. *See* Midwestern Waffles, Inc. v. Waffle House, Inc., 734 F.2d 705, 714 (11th Cir.1984).

## IV.   FEDERAL LAW CLAIMS

### A.   Claims against Defendant Brogdon in his individual capacity

#### 1.   Failure to protect

The Eighth Amendment prohibits cruel and unusual punishment.  It is a basic tenet of law that prison or jail officials violate the Eighth Amendment when they are deliberately indifferent to a substantial risk of serious harm to inmates.  Marsh v. Butler County, Ala., 268 F.3d 1014, 1027 (11th Cir.2001).  As noted by the Tenth Circuit, an "inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards."  Hovater v. Robinson, 1 F.3d 1063, 1068 (10th Cir.1993).

Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), sets out the familiar objective and subjective elements that must be shown to establish an Eighth Amendment violation.  For the objective element, a prisoner must show that an objectively substantial risk of serious harm existed; and once it is shown that an official is aware of this objectively substantial risk, the official must respond to this risk in an objectively unreasonable manner.  *See* Marsh, 268 F.3d at 1028-1029.  As for the subjective element, "the official must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. 837.

"[T]o show an Eighth Amendment constitutional violation, the summary judgment evidence, viewed in the light most favorable to Plaintiff, must show (i) facts presenting an objectively substantial risk to inmates and awareness of these facts on the part of the officials charged with deliberate indifference; (ii) that the officials drew the subjective inference from known facts that a substantial risk of serious harm existed; and (iii) that the officials responded in an objectively unreasonable manner." Doe v. Georgia Dep't of Corrs., 248 Fed.Appx. 67, 70 (11th Cir. August 21, 2007) (unpublished).

Boyd contends that "[t]he lack of supervision and the under-staffed shifts, coupled with a policy that allowed Nichols to remove Boyd by himself and take her around the jail as he pleased, created an obvious, substantial risk of serious harm...." (Doc. 33, p. 8). In the alternative, Plaintiff argues that Defendant Brogdon had knowledge of facts where the inference could be drawn of a substantial risk to inmate safety, and the fact that Defendant Brogdon asked for funds for a jail administrator showed that he drew the inference.

In the Court's opinion, Boyd has not shown that Defendant Brogdon was deliberately indifferent in failing to protect her from Defendant Nichols' assaults. There is no evidence in the record demonstrating that Defendant Brogdon had knowledge that Defendant Nichols was a threat to Boyd or any female inmate. Boyd

11

herself testified that she is not aware of any evidence showing that Defendant Brogdon had knowledge prior to April 21, 2007 of any accusations of sexual harassment against Defendant Nichols or knowledge of anything in Nichols' background which would have indicated that he might pose a danger to female detainees.[5]

Further, even though there was no policy in place to keep male jailers from escorting female inmates, "the record here [does not] contain any evidence to indicate that male guards at [Berrien County Jail], if left alone with female inmates,

---

[5]On the opposite end of the spectrum is the case of Hammond v. Gordon County, 316 F.Supp.2d 1262, decided by the Northern District of Georgia in 2002. There, the plaintiffs alleged that the sheriff and jail administrator violated the plaintiffs' constitutional rights by failing to protect them from sexual contact by various jailers. The court held that the plaintiffs presented sufficient evidence to create a genuine dispute with respect to their Eighth Amendment claims against the sheriff and jail administrator.

To satisfy the objective prong of the Farmer test, the Hammond plaintiffs presented evidence indicating, among other things, that jailers and inmates engaged in sexual relationships with one another, male and female inmates engaged in sexual relationships with one another, most jailers were provided with no formal training concerning proper contact with inmates, a history of complaints involving sexual relationships between jailers and inmates and sexual misconduct existed at the jail, and at least two previous investigations had occurred concerning complaints of sexual misconduct at the jail. Id. at 1290. The court also found that the plaintiffs satisfied the subjective prong of the Farmer test, in that the defendants were aware of a history of complaints about sexual misconduct at the jail, but took no steps to correct the situation or to ensure that such a situation did not present itself again. Finally, the court determined that there was a causal connection between the conduct of the defendants and the alleged constitutional violations, as the evidence indicated that the conditions at the jail caused the harm of which the plaintiffs complained. Id.

Unlike the supervisory defendants in Hammond, there is nothing in the record to show that Defendant Brogdon was aware of any sexual misconduct at the Jail prior to April 21, 2007, much less any on the part of Defendant Nichols.

posed a risk to their health and safety." *See* Barney v. Pulsipher, 143 F.3d 1299, 1311 (10th Cir.1998). The Court declines to find knowledge on the part of Defendant Brogdon of a substantial risk of harm from the mere fact of Defendant Nichols' gender. Without evidence of sexual misconduct in Defendant Nichols' background or any evidence of previous incidents of sexual misconduct by Berrien County jailers, Boyd has failed to raise a fact question on her deliberate indifference claim. *See* id.

Even assuming that the record supports an objectively substantial risk of serious harm and Defendant Brogdon drew the requisite inferences from known facts, Boyd's claim still cannot succeed. To establish an Eighth Amendment violation, Boyd must show that Defendant Brogdon's response was objectively unreasonable. It is undisputed that upon learning of Defendant Nichols' actions, Defendant Brogdon immediately called for an investigation and terminated Nichols' employment. The Eleventh Circuit held in two unpublished decisions that the immediate commencement of an investigatory process into unsubstantiated and contested allegations of sexual assault was a reasonable response to the danger posed to the inmate. Doe v. Georgia Dep't of Corrs., 245 Fed.Appx. 899, 903-904 (11th Cir. Aug. 17, 2007) (unpublished); Doe v. Georgia Dep't of Corrs., 248 Fed.Appx. 67, 71 (11th Cir. Aug. 21, 2007) (unpublished). The situations in the Doe cases were even more egregious, because at the time the guard assaulted the plaintiffs, prison officials knew that the guard had already been accused of sexually assaulting another inmate, which the guard denied. If an investigation was a

reasonable response to the danger presented in <u>Doe</u>, the investigation and immediate termination of Defendant Nichols here certainly cannot be considered an unreasonable response.  Defendant Brogdon is entitled to summary judgment in his favor on the Eighth Amendment failure to protect claim.

### 2.    Inadequate staffing

As for Boyd's staffing argument, a jail employee did testify that during the early months of 2007, the jail staff was shorthanded.  Defendant Brogdon, on the other hand, testified that the Jail was adequately staffed at all times, although there were times when jailers were sick or left the job altogether.  While it may have been preferable to have four jailers on the day shift, and while there may have been times the jail was short-staffed, there is no evidence in the record to show that the Jail was understaffed on the day of the rape.  Three jailers, including Defendant Nichols, were on duty.  Boyd has provided no evidence from any knowledgeable person to refute Defendant Brogdon's statement that the staffing was adequate.  *See* <u>Purcell ex rel. Estate of Morgan v. Toombs County, Georgia</u>, 400 F.3d 1313, 1322 n. 18 (11th Cir.2005) ("No expert testified that the Jail, given its inmate capacity, was understaffed.").  Without any evidence from Boyd that the Jail was inadequately staffed, Defendant Brogdon is entitled to summary judgment on the staffing claim.

### 3.    Failure to train

Boyd's next claim as to Defendant Brogdon is that he failed to adequately train his deputies and jailers in proper procedures for escorting and handling female inmates.  It is undisputed that Defendant Nichols received P.O.S.T. training in inmate relations, sexual harassment, and ethics and professionalism prior to taking his position at the Jail.  Viewing the evidence in Boyd's favor, Defendant Nichols did not receive any additional training while at the Jail.

To the extent Boyd is seeking to hold Defendant Brogdon liable for the acts of his subordinate, Defendant Nichols, "[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cotton v. Jenne, 326 F.3d 1352, 1360 (11th Cir.2003).  Supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of the supervisor and the alleged violation.  This causal connection may be established when a supervisor's "'custom or policy...result[s] in deliberate indifference to constitutional rights.'"[6] Id.  "The standard by which a supervisor is held

_____

[6]The causal connection can also be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cotton v. Jenne, 326 F.3d 1352, 1360 (11th Cir.2003) (internal citations omitted).  Since Boyd makes allegations only about

liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Id.

A supervisory official is not liable under § 1983 for an injury resulting from his failure to train subordinates unless "his failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact" and the failure has actually caused the injury about which the plaintiff complains. Popham v. City of Talladega, 908 F.2d 1561, 1564-1565 (11th Cir.1990). Only when the failure to train amounts to "deliberate indifference" can it be characterized as a policy or custom necessary for § 1983 liability to attach. City of Canton v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989). When the need for more or different training is obvious based on prior experience and when the failure to train is likely to result in a constitutional violation, failure to train can amount to deliberate indifference. Id. at 390.

As previously discussed, Defendant Brogdon had no knowledge of any prior sexual assaults at the Jail or any problems with jailers improperly escorting and handling female inmates. Boyd has put nothing before the Court that would have put Defendant Brogdon on notice of the need to provide training to his jailers on these issues. In any event, the jailer who was personally involved in the violation had been trained on how to interact with inmates and knew that it was improper to have

Defendant Brogdon's policies and customs, the Court will only address that basis for supervisory liability.

16

intimate contact with inmates.  This is not a situation where a male jailer received no training at all.  If that were the case, it might be a closer call as to whether additional training was required.  Based on the facts in the record, however, Defendant Brogdon is entitled to summary judgment on the failure to train claim.

**B.    Claims against Defendant Brogdon in his official capacity**

The Eleventh Amendment to the United States Constitution provides:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The Supreme Court has interpreted the Eleventh Amendment to bar suits against a state brought by its own citizens.  Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363, 121 S.Ct. 995, 962, 148 L.Ed.2d 866 (2001).  An entity that is considered an "arm of the State" is similarly immune from suit.  Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir.2003).

Defendant Brogdon makes the conclusory statement that Boyd's official capacity claims against him are barred by Eleventh Amendment immunity.  He, however, makes no argument as to why he is entitled to immunity.

Boyd argues that, based on the decision of the Northern District of Georgia in Dukes v. Georgia, 428 F.Supp.2d 1298 (N.D.Ga.2006), Defendant Brogdon is not entitled to immunity.  Dukes, which is not binding on this Court, was a case in which a pretrial detainee brought an action alleging deliberate indifference to a serious

17

medical need, among other things.  The individual defendants, one of whom was  a county sheriff, moved for summary judgment, contending that the Eleventh Amendment precluded the plaintiff's claims against them.  Id. at 1318.  After a lengthy analysis, the court concluded that the defendant sheriff was not acting as an "arm of the State" when caring for the medical needs of the plaintiff and denied his motion for summary judgment.  Id. at 1322.

It is Boyd's position that Defendant Brogdon's duty to assume responsibility for her safety and well being while in custody, which would require him to protect her from his employees and to train his employees, is analogous to the duty to provide medical care as discussed in Dukes.  Like the sheriff in Dukes, Boyd contends that Defendant Brogdon should not be considered an "arm of the State."

In determining that the sheriff was not an "arm of the State" for Eleventh Amendment purposes, the Dukes court considered four factors:  "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity."  Id. at 1318 (quoting Manders, 338 F.3d at 1309).  While Boyd points out these factors in her brief, she makes no effort to apply them to Defendant Brogdon and the particular function in which he was engaged when taking the action out of which liability arose.  See Manders, 338 F.3d at 1308.

Regardless, the Court is not convinced that the situation in Dukes is comparable to the situation at bar.  There are a number of Georgia state statutes

which refer to a sheriff as providing county functions when providing medical necessities to inmates. *See, e.g.,* O.C.G.A. §§ 42-4-1 and 42-5-2(a). Those statutes led the <u>Dukes</u> court to find that the sheriff was not an "arm of the State" for the particular function of providing medical care. Boyd has not directed the Court to any similar state statutes applicable to this particular function of Defendant Brogdon.

Boyd is ultimately complaining about policies implemented by Defendant Brogdon. In her view, his policy of failing to train jailers, policy of understaffing the Jail, and policy of allowing male jailers to handle female inmates without any supervision led to the violation of her rights. The Eleventh Circuit has held on a number of occasions that sheriffs were entitled to Eleventh Amendment immunity as an "arm of the State" in executing the function of establishing various policies. For example, in <u>Manders</u>, the court determined that the sheriff was entitled to immunity when he established and executed a use-of-force policy at the county jail. <u>Id.</u> at 1328. In <u>Scruggs v. Lee</u>, 256 Fed.Appx. 229, 232 (11th Cir. June 15, 2007) (unpublished), the court held that the sheriff was entitled to immunity in executing the function of establishing policies at the jail for processing arrestees. And in <u>Purcell ex rel. Estate of Morgan v. Toombs County, Ga.</u>, 400 F.3d 1313, 1325 (11th Cir.2005), the court found that the sheriff functioned as an "arm of the State," not the county, when promulgating policies and procedures governing conditions of confinement at the county jail.

Boyd invites the Court to ignore the Purcell decision, because, in her opinion, the Eleventh Circuit failed to apply the Manders factors and improperly came to an "all or nothing" conclusion that a sheriff is immune from liability under the Eleventh Amendment when applying policies at county jails.  The Court declines the invitation. The Eleventh Circuit specifically said in Manders that the sheriff's "authority and duty to administer the jail in his jurisdiction flows from the State, not [the] County."  338 F.3d at 1315.  Thus, when Defendant Brogdon administers the Jail through his policies, he is doing so as an "arm of the State."  Accordingly, Defendant Brogdon is entitled to Eleventh Amendment immunity from suit in his official capacity.

### C.    Claims against Berrien County

Boyd contends that her constitutional rights were violated by Berrien County's intentional underfunding of the Sheriff's Department and Jail, which in turn led to understaffing of the Jail.  A county may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees.  "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that her constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."  McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir.2004).  There must be "a direct causal link between a municipal policy or custom and the alleged constitutional violation."  City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989).  It is only when

the execution of a governmental policy or custom inflicts the injury that the government as an entity is responsible under § 1983.  Brannon v. Thomas County Jail, 280 Fed.Appx. 930, 933 (11th Cir. June 9, 2008) (unpublished).

As previously discussed, Boyd's constitutional rights were not violated.  This alone means that her claims against Berrien County fail.  In order to thoroughly address Boyd's claims, however, the Court will analyze her claim as if she has met the first prong of the McDowell test.  Boyd must next "identify a municipal 'policy' or 'custom' that caused [her] injury."  Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir.1999) (quoting Bd. of County Comm'rs v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).  A custom is "a practice that is so settled and permanent that it takes on the force of law."  Wayne, 197 F.3d at 1105.  In order for a plaintiff to demonstrate a policy or custom, it is "generally necessary to show a persistent and wide-spread practice."  Id.  This ensures that liability is not imposed based upon an isolated incident.

According to Boyd, Berrien County had a policy or custom of underfunding and understaffing the Jail.  To demonstrate the Jail's "routine" understaffing practices, Boyd points to one employee's statement that the Jail was shorthanded in early 2007 and testimony that sometimes there were three or fewer jailers working on the day shift.  To the Court, this falls far short of showing a persistent or wide-spread practice.  It should also be noted that Boyd has not pointed to any other occasion

when the Jail's alleged understaffing has led to any kind of assault on an inmate, sexual or not, and by a jailer or not.

The Court must also consider whether Berrien County's action was "taken with the requisite degree of culpability...with deliberate indifference to its known or obvious consequences." McDowell, 392 F.3d at 1291 (quoting Davis ex rel. Doe v. Dekalb County Sch. Dist., 233 F.3d 1367, 1375-1376 (11th Cir.2000)).  In order to hold Berrien County liable, Boyd must show that the County had a "deliberate intent" to inadequately staff the Jail.  Id.

In McDowell v. Brown, the plaintiff alleged that DeKalb County's custom of inadequate budgeting for the sheriff's office and jail resulted in understaffing, which in turn lead to the failure to transport him to the hospital during a medical emergency. Put another way, the plaintiff traced the county's liability to its failure to properly fund the resources necessary to staff the jail.  Id.  Boyd makes the exact same underfunding argument here.  Based on the holding in McDowell, Boyd's claim necessarily fails.  As noted by the Eleventh Circuit, the Supreme Court has refused to extend § 1983 liability for a municipality to inadequate hiring practices.  Id. (citing Brown, 520 U.S. at 409).  Boyd "is asking this Court to extend liability to inadequate budgeting practices, but does not identify any 'pattern of injuries' linked to the County's budgetary decisions...."  Id.  Even assuming that Boyd contends Berrien County's accounting practices relating to the Sheriff's Department and Jail are "defective," Brown, 520 U.S. at 408, this still does not establish liability.   No

evidence has been produced by Boyd to show that the alleged constitutional violation here was a "highly predictable consequence" of Berrien County's failure to budget and adequately staff the Jail.  McDowell, 392 F.3d at 1292.  Further, Boyd has produced no evidence that the Jail was underfunded to an extent that exhibits deliberate indifference to the Jail's safety and security, or that the alleged problem could have been resolved with additional funding.[7]  See Presley v. Smith, 2008 WL 3911251 (S.D.Ala. August 21, 2008).

Notwithstanding the foregoing, Boyd also cannot maintain her claim against Berrien County because she cannot prove causation.  A plaintiff must prove causation by demonstrating that the municipality's "*deliberate* conduct...was the 'moving force' behind her injury...."  Id. (quoting Brown, 520 U.S. at 404) (emphasis in original).  Thus, the Court must "look to whether a complete review of the budget decision (and the resulting understaffed Jail) reveals that the Board should have known that [Boyd's] injuries were a 'plainly obvious consequence' of that decision."  Id. at 1292-1293 (quoting Brown, 520 U.S. at 412).  There is no evidence in the record to lead the Court to the conclusion Boyd desires.  There certainly is nothing that shows the implementation of an "intentionally malevolent or impermissible policy" by Berrien County.  "The fact that the Board's budget practices resulted in

---

[7] As with the understaffing, the Court does not believe the evidence in the record supports Boyd's contention that Berrien County had a persistent or wide-spread practice of underfunding the Jail.

understaffing does not amount to a purposeful disregard which would violate any citizen's constitutional rights." Id. at 1293.  Berrien County is entitled to summary judgment on Boyd's claims against it.

### D.    Claims under 18 U.S.C. § 242

In addition, Boyd has referred to 18 U.S.C. § 242 as a basis for relief.  This section of Title 18 pertains to criminal law and does not provide a civil cause of action or any civil remedies.  See Thibeaux v. U.S. Atty. Gen., 275 Fed.Appx. 889 (11th Cir. April 30, 2008) (unpublished).  Defendants Brogdon and Berrien County are entitled to summary judgment on Boyd's claims under 18 U.S.C. § 242.

## V.    STATE LAW CLAIMS

In addition to her federal claims, Boyd brings a number of state law claims against Defendant Brogdon, both in his individual and official capacities, and against Berrien County.[8]  The first is a claim that Defendants Brogdon and Berrien County deprived her of certain rights secured under the Georgia Constitution.  The remaining state law claims, which consist of cruelty by jailers, negligent hiring, negligent supervision, and negligent training, are only asserted against Defendant Brogdon.

---

[8]Boyd also alleges the following state law claims against Defendant Nichols:  (1) depriving Plaintiff of her rights secured under Art. I, § I, ¶ XVII of the Georgia Constitution; (2) cruelty by jailers, in violation of O.C.G.A. § 42-4-5; (3) rape; (4) aggravated sodomy; (5) false imprisonment; (6) kidnapping; and (7) intentional infliction of emotional distress. The Court will not address these claims, which will move forward for trial along with the federal claims pending against Defendant Nichols.

### A.    Art. I, § I, ¶ XVII of the Georgia Constitution

Like the United States Constitution, the Georgia Constitution contains a prohibition against cruel and unusual punishment.  "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted; nor shall any person be abused in being arrested, while under arrest, or in prison." Ga. Const. art. I, § 1, ¶ XVII.

Georgia courts have not yet decided whether this state constitutional amendment provides more protection to prisoners than federal constitutional standards.  The Georgia Court of Appeals has determined in the context of a pre-trial detainee that Art. I, § I, Par. XVII of the Georgia Constitution provides at least as much protection as the Fourteenth Amendment due process clause.  Long v. Jones, 208 Ga.App. 798, 800, 432 S.E.2d 593 (Ga.App. 1993).  The Court believes that the Georgia amendment would similarly provide a prisoner with at least as much protection as the Eighth Amendment of the United States Constitution.

As previously determined, Boyd has not suffered an Eighth Amendment violation at the hands of Defendants Brogdon and Berrien County.  This means she also has not suffered a violation under Art. I, § 1, Par. XVII of the Georgia Constitution.   The Court will not reach the question of whether Georgia's constitutional prohibition against abuse may provide more protection to Boyd than the Eighth Amendment.  Defendants Brogdon and Berrien County are entitled to summary judgment on this claim.

**B.     Cruelty by jailers in violation of O.C.G.A. §§ 42-4-1 and 42-4-5**

O.C.G.A. § 42-4-5 prohibits the inhumane or oppressive treatment of any inmate under the care and custody of a jailer.[9]  Any jailer who violates this statute "shall be punished by removal from office and imprisonment for not less than one year nor longer than three years." O.C.G.A. § 42-4-5(b).  Boyd cannot recover in this action for a violation of this code section because it does not provide for any civil remedy.  In any event, the inhumane treatment in this case was the work of Defendant Nichols, not Defendant Brogdon.  Defendant Brogdon is entitled to summary judgment on Boyd's cruelty by jailers claim.

**C.     Negligent hiring**

Under Georgia law, an employer "has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's 'tendencies' or propensities that the employee could cause the type of harm sustained by the plaintiff."  Munroe v. Universal Health Servs., Inc., 277 Ga. 861, 863, 596 S.E.2d 604, 606 (2004).

Boyd does not oppose Defendant Brogdon's request for summary judgment on the negligent hiring claim.  Even if she did, her claim would fail.  With a negligent hiring claim, there must be evidence of "a causal connection between the

_____

[9]The Court will disregard Defendant Brogdon's argument with respect to O.C.G.A. § 42-4-4 as Boyd's claim is based on § 42-4-5, not § 42-4-4.

employee's particular incompetency for the job and the injury sustained by the plaintiff." Id. Boyd has pointed to no evidence in the record of any incompetency for the job on the part of Defendant Nichols. The Court is aware of nothing in Defendant Nichols' record as a deputy and jailer that suggested a propensity for sexual assault or made it reasonably foreseeable that Nichols would commit any kind of assault against Boyd. There is no evidence that Defendant Nichols had a criminal record, or that previous allegations of physical abuse had been made against him. Without evidence of a causal connection, a negligent hiring claim cannot go to a jury. There is no such connection here. Defendant Brogdon is entitled to summary judgment on the negligent hiring claim.

### D.      Negligent training and supervision

Though not specifically stated, Boyd's state law claim for negligent training and supervision is presumably based on her argument that Defendant Brogdon's training and policies regarding the handling of female inmates, along with the supervision of the jailers, or lack thereof, led to Boyd's assault.

"Negligence is predicated on what should be anticipated, rather than on what happened, because one is not bound to anticipate or foresee and provide against what is unlikely, remote, slightly probable, or slightly possible." Hodges v. Putzel Elec. Contractors, Inc., 260 Ga.App. 590, 594, 580 S.E.2d 243 (2003). Boyd has not established that Defendant Brodgon was aware of a specific need for training to prevent a reasonably foreseeable risk of harm. There also is no evidence to indicate

27

that Defendant Brogdon should have foreseen that additional training was needed in the area of sexual assault or with regard to handling female inmates.

In order to defeat summary judgment on negligent training and supervision claims, a plaintiff must produce some evidence of incidents similar to the behavior that was the cause of the injury at issue.  Remediation Resources, Inc. v. Balding, 281 Ga.App. 31, 34, 635 S.E.2d 332 (2006).  Boyd has not produced the required evidence.  Defendant Brogdon is entitled to summary judgment on the negligent supervision and training claims.

### E.   Official immunity

Defendant Brogdon argues that he is entitled to official immunity for the state law claims brought against him in his individual capacity.  Generally, governmental employees who are sued in their individual capacities for discretionary acts performed within the scope of their employment are entitled to official immunity.  Ga. Const. art. I, § II, ¶ IX(d).

> The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity.  Qualified immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption.  Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure.

Clark v. Prison Health Svcs., 257 Ga.App. 787, 791(2), 572 S.E.2d 342 (2002)

(citation omitted).

The Georgia courts have described the difference between ministerial and

discretionary acts as follows:

> A ministerial act is commonly one that is simple, absolute,
> and definite, arising under conditions admitted or proved
> to exist, and requiring merely the execution of a specific
> duty.  A discretionary act, however, calls for the exercise
> of personal deliberation and judgment, which in turn
> entails examining the facts, reaching reasoned
> conclusions, and acting on them in a way not specifically
> directed.

Standard v. Hobbs, 263 Ga.App. 873, 875(1), 589 S.E.2d 634 (2003).

Boyd argues that Defendant Brogdon is not entitled to official immunity

because the duty to protect inmates and supervise and train jailers is a ministerial

duty, rather than a discretionary one.  Or in other words, training, supervision, and

adoption of an official policy regarding the transport and handling of female inmates

are ministerial functions.  The Court disagrees.

The Georgia Court of Appeals recently held that "[e]mployment decisions,

including the retention, hiring and supervision of employees, 'necessarily require

consideration of numerous factors and the exercise of deliberation and judgment.

They are therefore precisely the types of administrative action the discretionary

function exception seeks to shield from judicial second-guessing.'" Doss v. City of

Savannah, 290 Ga.App. 670, 675, 660 S.E.2d 457 (2008) (quoting Ga. State Bd. of

Pardons and Paroles v. Finch, 269 Ga.App. 791, 794(2), 605 S.E.2d 414 (2004)). The Georgia courts have consistently held that "'[t]he operation of a police department, including the degree of training and supervision to be provided its officers, is a discretionary governmental function of the [county] as opposed to a ministerial, proprietary, or administratively routine function.'" Middlebrooks v. Bibb County, 261 Ga.App. 382, 386, 582 S.E.2d 539 (2003) (quoting Carter v. Glenn, 249 Ga.App. 414, 416, 548 S.E.2d 110 (2001) (internal citation omitted)); *see also* Harvey v. Nichols, 260 Ga.App. 187, 581 S.E.2d 272 (2003) (holding that the sheriff's duties of operating the jail, supervising the jail's officers and employees, and establishing procedures and policies for the jail were discretionary acts).

Since the acts about which Boyd complains are discretionary acts, in order to recover, Boyd would have to show evidence of malice on the part of Defendant Brogdon or an intent to cause injury in the performance of his official functions. *See* McDay v. City of Atlanta, 204 Ga.App. 621(1), 420 S.E.2d 75 (1992). No such showing has been made. Defendant Brogdon is entitled to official immunity as a matter of law.

### F.    **Sovereign immunity**

Berrien County is also entitled to summary judgment on Boyd's state law claim under the doctrine of sovereign immunity. "A county is not liable to suit for any cause of action unless made so by statute." O.C.G.A. § 36-1-4; *see also* Swan v.

Johnson, 219 Ga.App. 450, 452, 465 S.E.2d 684 (1995) ("[C]ounties have not waived their sovereign immunity and will retain immunity until it is waived by an act of the General Assembly.").[10]  As Boyd has shown no evidence that this immunity has been waived by an act of the General Assembly, Berrien County is entitled to summary judgment as to Boyd's state law claims.

Further, Defendant Brogdon is entitled to sovereign immunity on the state law claims brought against him in his official capacity.  "[T]he county sheriff in his official capacity is immune from tort liability in performing an official function and may be liable only to the extent that the county has waived sovereign immunity by statute." Howard v. City of Columbus, 239 Ga.App. 399, 410, 521 S.E.2d 51 (1999).  "This includes actions brought under a theory of negligence as the plaintiff[] [has] asserted in this case."  Id. (quoting Early County v. Fincher, 184 Ga.App. 47, 49(2), 360 S.E.2d 602 (1987)).  Thus, because Berrien County has not waived its sovereign immunity, Defendant Brogdon, in his official capacity, is entitled to summary judgment as to Boyd's state law claims.

## VI.   CONCLUSION

For the reasons set forth above, Defendants Brogdon and Berrien County's Motion for Summary Judgment (Doc. 24) is granted.

---

[10]Boyd has not opposed Berrien County's claim that it is entitled to sovereign immunity on her state law claim.

31

**SO ORDERED**, this the 5th day of May, 2009.

s/  *Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

mbh